IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:93CR216-MU

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>)<br>   v. )<br>)<br>VINCENT BEST, )<br>    Defendant. )<br>_____) | ORDER |

**THIS MATTER** comes before the Court on the defendant's document captioned as a "Petition [F]or [R]eduction [O]f [S]entence 18 USC 3582," filed January 9, 2004 (document # 79); on his "Petition [F]or [L]eave [T]o [S]upplement . . . [And] Petition [F]or [R]eduction [O]f [S]entence" ("Petition for Down-ward Departure," hereafter), filed June 10, 2004 (document #80); on his "Petition [F]or Consolidation [A]nd Status," filed September 9, 2004 (document #82); on his "Petition [T]o Amend 18 USC [§]3582(c)(2) . . . " ("First Petition for Habeas Corpus Relief," hereafter), filed July 5, 2005 (document #83); on the "Government's [Combined] Response To Defendant's Motion To Reduce Sentence Pursuant To 18 U.S.C. §3582(c)(2), Supplement To Motion, And Proposed Amendment," filed December 15, 2005 (document #85); on the defendant's "Reply [T]o [G]overnment . . . Response,"

filed January 9, 2006 (document #87); and on his document captioned as "New [S]upporting Evidence [F]rom [T]he Bureau [O]f Prisons" ("Second Petition for Habeas Corpus Relief," hereafter), filed May 18, 2006 (document #88).

For the reasons stated herein, the Court will grant the defendant's Petition for Reduction pursuant to Amendment 505 of the U.S. Sentencing Guidelines. In particular, based upon the subject Amendment and the factors hereafter discussed, the Court will enter an amended Judgment, reflecting a sentence which has been calculated under the modified Guidelines range.

However, for the further reasons stated herein, including those matters set forth in the government's Response, the defendant's Petition for a Downward Departure will be denied; his Petition for Consolidation and Status will be granted in part, and dismissed in part; and his First and Second Petitions for Habeas Corpus Relief both will be dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to pertinent Court documents, on November 2, 1993, the defendant was named in a Superceding Bill of Indictment. Such Bill charged the defendant with conspiring to possess with intent to distribute, and to distribute quantities of cocaine and cocaine base, all in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); and it charged him with possessing with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1) (Count

Two). Count Three alleged that certain property which belonged to the petitioner was subject to forfeiture.

On December 15, 1993, the defendant executed a Plea Agreement with the government. By the terms of that document, the defendant agreed to plead guilty to the violations set forth in Counts One and Three in exchange for the government's promise to dismiss Count Two. Furthermore, such Agreement expressly stipulated that the amount of cocaine base for which the defendant could be held accountable was more than 5 but less than 15 kilograms. Equally, critically, by his Agreement, the defendant waived his right to directly appeal his convictions and/or sentence, and his right to collaterally challenge those matters on any ground except ineffective assistance of counsel or prosecutorial misconduct.

Next, on January 27, 1994, the defendant appeared before the Court for a Plea & Rule 11 proceeding. During that proceeding, the Court engaged the defendant in a lengthy colloquy to ensure that his pleas were being intelligently and voluntarily tendered. Such colloquy included the defendant's sworn representations that he was, in fact, guilty of the subject offenses; that his conduct had involved between 5 and 15 kilograms of cocaine base; that his admission to such conduct exposed him to a statutory maximum term of life imprisonment; and that he understood the appellate waivers to which he had agreed. Thus, after considering those

and all of the other answers which the defendant provided, the Court accepted his guilty pleas.

Thereafter, based upon certain additional representations concerning the defendant's plans to cooperate with the government, the Court released the defendant on bond, pending the resolution of his case. However, when the defendant failed to appear for his Factual Basis & Sentencing Hearing on May 17, 1994, the Court issued an Order to revoke his bond.

Thereafter, on August 11, 1994, the defendant was located in Hickory, North Carolina and arrested, but he escaped from custody later that evening.[1] In any event, the defendant finally was apprehended in Roanoke, Virginia on August 19, 1994, at which point he was returned to this District for Sentencing.

Consequently, on September 23, 2004, the defendant's Factual Basis & Sentencing Hearing was held. On that occasion, the defendant declined to challenge any of the matters set forth in his Pre-Sentence Report. Rather, during a lengthy statement to the Court, the defendant said that he had "done wrong," he said he was "'fessing up to his wrongdoing," he said he "ha[d] to accept responsibility for what [he] ha[d] been involved in . . . ," and he asked the Court for lenience.

---

[1] Apparently, the defendant was able to escape from custody by staging a call from a "U.S. Marshal" in Atlanta, Georgia to the county Jail where he was being held. Such "Marshal" directed the deputies to release the defendant because his fingerprint card had not matched the card which the "Marshal" had on file for "Vincent Best."

4

Next, after reviewing the defendant's Pre-Sentence Report, the Court concluded that his Total Offense Level was 42, which level included a two-point enhancement for obstruction of justice based upon the defendant's actual and attempted escapes from custody. The Court also concluded that the defendant's Criminal History Category--which included at least one prior drug conviction--was II. As a result, the defendant faced a corresponding range of 360 months to life imprisonment. The Court ultimately sentenced the defendant to a term of life imprisonment. The Court's Judgment was filed on September 28, 1994, but the defendant did <u>not</u> timely give his notice of appeal.

Rather, in April 1995, the defendant unsuccessfully sought permission to file an out-of-time appeal. Then, on September 14, 1995, the defendant filed a belated Notice of Appeal with the Fourth Circuit Court of Appeals. Not surprisingly, however, such appeal was dismissed as untimely filed. <u>See</u> <u>United States v. Best</u>, No. 95-5769, slip op. at 2 (4th Cir. July 3, 1997).

Next, on December 18, 1997, the defendant filed a Motion to Vacate under 28 U.S.C. §2255, setting forth some 12 claims for the Court's review (<u>see</u> 3:95CV190-P). However, after noting that the waiver provisions in the defendant's Plea Agreement precluded all but his two of claims of ineffective assistance of counsel, the Court summarily dismissed the other matters. As to his two claims against counsel, the Court found that those matters also

5

had to be dismissed for the defendant's failure to demonstrate either that counsel had been deficient or that the performance had been prejudicial. The Court's Order of dismissal was filed on November 1, 1999.

Next, after about an 18-month hiatus, in or about July 2001, the defendant filed a Motion pursuant to 28 U.S.C. §2244, seeking permission from the Fourth Circuit to file a successive Motion to Vacate. However, that Court denied the defendant's Motion by Order of July 27, 2001.

Then, after a lapse of more than two additional years, in January 2004, the defendant returned to this Court and began filing the pleadings which now are pending before the Court. Nevertheless, as the undersigned already has indicated, the Court will grant the defendant relief only on his Petitions for Reduction and for Consolidation.

## II. ANALYSIS

### A. The Petition for Reduction under §3582(c)(2)

By his Petition for Reduction of Sentence under 18 U.S.C. §3582, the defendant asks the Court to apply Amendment 505 of the U.S. Sentencing Guidelines in order to reduce his sentence from life imprisonment to a term of years. The government has opposed this request.

However, as the defendant correctly notes, and the government concedes, on November 1, 1994--or about 39 days after the

6

defendant was sentenced by this Court--the United States Sentencing Commission adopted Amendment 505. Such Amendment eliminated the highest level of the Drug Quantity Table as set forth under U.S.S.G. §2D1(c), thereby capping the base offense level for drug offenses of any quantity at 38. Thereafter, on November 1, 1995, the Sentencing Commission authorized courts, at their discretion, to apply Amendment 505 retroactively. See U.S.S.G. §1B1.10(a) and (c).

Relevant to this case, Amendment 505 reduced the top base offense level for the defendant from 40--the level which was used to calculate his sentence–-to 38. In practical terms, then, even when the two-level obstruction enhancement is included, as it must be,[2] and the resulting Offense Level of 40 is coupled with Criminal History Category II, the defendant's sentencing exposure could be reduced from 360 months to life imprisonment down to 324 to 405 months imprisonment.

Indeed, as the government has properly noted, 18 U.S.C. §3582(c)(2) provides courts with limited opportunities to modify sentences by allowing them to determine whether or not to apply Amendment 505 in any given case. Therefore, the defendant here is not entitled to a reduction as a matter of right. Instead, the reduction may be granted only if the Court determines that it

---

[2] U.S.S.G. §1B1.10, n.2 notes that even when a reduction pursuant to an Amendment is granted, "all other guideline application decisions remain unaffected."

7

is appropriate under the circumstances of the case. See <u>United States v. Legree</u>, 205 F.3d 724, 727 (4th Cir. 2000) (noting that a reduction is discretionary with the court).

In making that determination, the Sentencing Commission directs the sentencing court to: (1) "consider the term of impri-sonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time that the defendant was sentenced," U.S.S.G. §1B1.10; and (2) to consider the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sen-tence to reflect the seriousness of the offense and to protect the public. 18 U.S.C. §3553(a).

As for the first of the two inquiries, the record of this matter reflects that at the time of Sentencing, Judge Potter,[3] in his discretion, determined that a term at the highest point with-in the applicable Guidelines range was appropriate. However, with all due respect to Judge Potter, the undersigned finds that if he had sentenced the defendant under the Guidelines range which now applies, the Court likely would have imposed a term at or near the middle point of the 324 to 405-month range, that is, at or around 360 months imprisonment. Indeed, over the years the

---

[3] Originally, the defendant's case was presided over by the Honorable Robert D. Potter, U.S. District Judge. However, Judge Potter has retired and this case has been re-assigned to the undersigned for resolution. Therefore, the undersigned will exercise his own judgment and discretion in determining whether and how much to reduce the defendant's sentence.

8

undersigned routinely has opined that maximum and/or terms of life imprisonment are not always in the best interests of society.  More particularly, the undersigned often has remarked that such terms should be reserved for the worst offenders, whose offenses of conviction involved serious or extreme acts of violence.

As to the second inquiry, the undersigned believes that the imposition of a sentence which tends toward the middle point of the amended range is consistent with the additional factors which must be considered.  As was already noted, the offenses of conviction were not of a violent nature.  Second, the history and characteristics of the defendant were such that the government was willing to give him a pre-sentencing opportunity to cooperate and earn a reduced sentence.  In other words, the record reflects that the defendant did not fall into the so-called "worst-of-the-worst" category.  Last, the undersigned finds that a sentence at or near the middle point of this range would both reflect the seriousness of the defendant's conduct as well as protect the public from him.  Indeed, by the time that the defendant completes his sentence, his age will be at or approaching the middle sixties, thereby making him less of a potential threat to the public.  Therefore, the Court concludes that a reduction is consistent with the law and appropriate under the circumstances.

On the other hand, the Court finds unavailing the defen-

dant's argument that his sentence should be further reduced because a prior conviction erroneously was double-counted by the Court. Rather, even assuming that the State of North Carolina gave the defendant immunity from prosecution in State court for the same conduct which formed the basis of the instant federal charges and convictions, such fact is of no import to this Court. Indeed, notwithstanding the fact that this argument goes beyond the scope of any consideration of a reduction under §3852(c)(2), it is well settled that immunity from prosecution given by state officials does not preclude a federal prosecution since the federal government is a different sovereign from the state. See generally United States v. Lara, 541 U.S. 193, 197-200 (2004) (noting the "dual sovereigns" doctrine in the context of double jeopardy claim).

Consequently, for the foregoing reasons, the undersigned will grant the defendant's Petition for Reduction based solely upon Amendment 505, and will enter an amended Judgment setting forth a sentence of 360 months imprisonment.

### B. The Petition for Consolidation and Status

The defendant also has filed a Petition for Consolidation and Status, by which he seeks to have his requests for a reduction under §3582(c)(2) and for a downward departure considered together, and to receive information concerning the status of his Petitions. Upon consideration of this Petition, the Court agrees

with the defendant that all of his requests for reductions and departures should be considered together. However, inasmuch as this Order announces the resolution of all such requests, the defendant's request to obtain the statuses of such Petitions is moot. Therefore, the defendant's Petition for Consolidation and for Status will be <u>granted</u> in part and <u>dismissed</u> in part.

### C. <u>The Petition for Downward Departure</u>

By this Petition, the defendant is requesting a downward departure on the basis of his post-sentencing rehabilitation activities, his substantial assistance to various non-prosecutorial agencies and his purported post-sentencing acceptance of responsibility. However, this request must be flatly rejected.

First, the Fourth Circuit already has affirmed this Court's earlier determination that when considering a sentence reduction under 18 U.S.C. §3582(c)(2), the district court lacks the authority to consider additional requests for downward departures based on the defendant's role in the offense, on post-sentencing rehabilitation, or on <u>Apprendi</u>-based issues. <u>United States v. Smith</u>, 11 Fed. Appx. 165, 167 (4th Cir. W.D.N.C. 2001). In fact, the appellate Court explained that consideration of a motion under §3582(c)(2) is analogous to a limited remand, not a <u>de novo</u> review. <u>Id</u>. Thus, neither of the defendant's bases for departure comes within the scope of a §3582(c)(2) reduction. <u>See also</u> U.S.S.G. §1B1.10, n.2.

11

Second, the defendant's request for a downward departure based upon post-sentencing rehabilitation expressly is precluded under the Guidelines, see §5K2.19 (noting that post-sentencing rehabilitation efforts, "even if exceptional," simply are not an appropriate consideration upon re-sentencing.

Third, even assuming the defendant's participation in his prison's Inmate Safety Suicide Prevention program can be deemed to manifest his belated acceptance of responsibility for his crimes, such fact still is of little consequence here. On the contrary, it goes without saying that the determination of whether or not a defendant has accepted responsibility is relevant at the time of sentencing, not at some later point like this.

Fourth, the term "substantial assistance" is a term of art, which has precise meaning under the law. By its definition, substantial assistance is "directed to the investigation and prosecution of criminal activities [committed] by persons other than the defendant . . . ." U.S.S.G. §5K1.1, n. 2. Thus, inasmuch as the defendant has failed to establish that his conduct meets the test of "substantial assistance," he cannot obtain a reduction on this basis in any event.

Moreover, as the government has noted, the defendant's post-sentencing rehabilitative efforts and his efforts to assist various government entities can (and likely will be) accounted

12

for under 18 U.S.C. §3624.  Specifically, §3624 allows the Bureau
of Prisons to award so-called "good-time" credit to defendants
whose behavior has been satisfactory during the service of their
sentences.  Therefore, the defendant's Petition for a Downward
Departure must be <u>denied</u>.

### D. <u>The Petitions for Habeas Corpus Relief</u>

Finally, as for the defendant's two Petitions for <u>Habeas Corpus</u> Relief, by which he seeks a sentence reduction on the basis of certain recent U.S. Supreme Court decisions, the Court finds that such request be flatly rejected.  That is, the defendant's attempt to invoke the line of reasoning from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and its progeny, is unavailing for two critical reasons.

First, a challenge to the sufficiency of the indictment would necessarily sound in <u>habeas</u>.  However, because the defendant waived his right to raise such matters by the terms of his Plea Agreement, he cannot now bring this claim.

Second, even if the defendant had not waived his right to raise this claim--and such a claim were not time-barred under the Antiterrorism and Effective Death Penalty Act of 1996--the same still would be barred as successive.  Indeed, as has been noted, the defendant already has filed an unsuccessful collateral challenge to his convictions; therefore, he is not entitled to bring any new collateral challenges without prior authorization

13

from the Fourth Circuit Court of Appeals.

As for the defendant's assertion that his sentence was imposed in violation of the notice requirements set forth under 21 U.S.C. §851, this claim also is factually baseless. That is, under 21 U.S.C. §841(b)(1)(A), the defendant's admitted involvement with 5 to 15 kilograms of crack exposed him to a term of up to life imprisonment without regard to statutory enhancements. Therefore, there was no need for the government to file a notice under §851 in order to obtain a life sentence for the defendant.

Finally, the Court has carefully considered the matters raised in the defendant's Reply to the government's Response and in his miscellaneous correspondence with the Court, and has deter-mined that none of those matters warrants any further reduction for the defendant.

### III. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The defendant's Petition for Reduction under 18 U.S.C. §3582(c)(2) (document #79) is **GRANTED**. The Court shall prepare an amended Judgment, reflecting a sentence of 360 months imprisonment. <u>All other aspects of the defendant's original Judgment shall remain undisturbed</u>.

2. The defendant's Petition for a Downward Departure (document #80) is **DENIED;**

4. The defendant's Petition for Consolidation and Status

(document # 82) is **GRANTED in part and DISMISSED (as moot) in part;** and

5. The defendant's First and Second Petition for Habeas Corpus Relief (documents ##83 and 88) are **DENIED.**

**SO ORDERED.**

Signed: July 31, 2006

Graham C. Mullen
United States District Judge